**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, ex rel. CHRISTOPHER NEAL, | ) ) ) | |
| Petitioner, | ) ) | No. 11 C 7388 |
| v. | ) ) | Judge Ronald A. Guzmán |
| MARCUS HARDY, Warden, Stateville Correctional Center, | ) ) ) ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION AND ORDER**

Christopher Neal has filed a petition pursuant to 28 U.S.C. § 2254 for writ of habeas corpus to vacate his state court murder convictions and life sentence. For the reasons set forth below, the Court denies the petition.

**Discussion**

**Procedural Default**

A habeas petitioner can pursue his claims in federal court only after raising them in "one complete round of state-court review." *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004); *see* 28 U.S.C. § 2254(c) ("An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented."). "This means that the petitioner must raise [them] at each and every level in the state court system, including levels at which review is discretionary rather than mandatory." *Lewis*, 390 F.3d at 1025-26.

In his habeas petition, Neal argues that: (1) his conviction violates due process because there is not enough evidence to support it; (2) his trial counsel was ineffective for: (a) failing to call an alibi witness; (b) convincing Neal to waive his right to a jury trial; (c) failing to move to strike improper in-court identifications; (d) failing to present expert testimony on eyewitness identification; (e) abandoning a motion to quash Neal's arrest based on the denial of his right to counsel during the lineup; and (3) his appellate counsel was ineffective for failing to argue that: (a) trial counsel was ineffective for not moving to strike in-court identifications; (b) Neal's right to counsel was violated during the lineup; (c) Neal's sentence was unconstitutional; and (d) trial counsel was ineffective for abandoning the motion to quash Neal's arrest based on the denial of counsel during the lineup.

Neal did not raise: (1) claims 2b, 2c or 3a in his *pro se* or supplemental petitions for post-conviction relief (*see* Ex. F, *Pro Se* Pet. Post-Conviction Relief, *People v. Neal*, No. 96 CR 14024 (Cir. Ct. Cook Cnty. Sept. 2, 2003); (Ex. G, Supplemental Pet. Post-Conviction Relief, *People v. Neal*, No. 96 CR 14024 (Cir. Ct. Cook Cnty. May 8, 2007)); (2) claims 2a, 2e, 3b or 3d in his appeal of the order denying his *pro se* and supplemental petitions for post-conviction relief (*see* Ex. I, Br. & Arg. Pet'r-Appellant at 2, *People v. Neal*, No. 1-08-2458 (Ill. App. Ct. Dec. 14, 2009)); and (3) claim 3c in his petition for leave to appeal the order affirming denial of his post-conviction petitions to the supreme court (*see* Ex. M, Pet. Leave Appeal, *People v. Neal*, No. 11235 (Ill. Jun. 9, 2011)).

Despite the procedural default, the Court can consider these claims if Neal can show cause for and prejudice from having failed to raise them in state court. *Lee v. Davis*, 328 F.3d 896, 900 (7th Cir. 2003). The only apparent reason for the default, however, is that Neal's post-conviction counsel failed to raise them. That failure does not, as a matter of law, constitute "cause" for the

2

default. 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."); *Neal v. Gramley*, 99 F.3d 841, 843 (7th Cir. 1996) (stating that "[t]here is no federal constitutional right to counsel in a postconviction proceeding," and thus "procedural defaults due to the blunderings of such counsel are not to be excused").

Alternatively, the Court can consider the defaulted claims if Neal "can establish that the denial of relief will result in a miscarriage of justice." *Lewis*, 390 F.3d at 1026. The miscarriage of justice exception requires Neal to "show that he is actually innocent of the offense[s] for which he was convicted, *i.e.*, that no reasonable [fact finder] would have found him guilty of the crime[s] but for the error(s) he attributes to the state court." *Id.* Neal contends that claim 2a, that his trial counsel was ineffective for failing to call alibi witness Trina Morton, falls into this exception because she would have testified that he was at home with her at the time of the crimes.

During the post-conviction proceedings, Morton testified that Neal, who was then her live-in boyfriend, came home around 10:00 p.m. the night before the crimes, slept with her all night and was still there the next morning. (*See* Ex. G, Rep. Proceedings at RR-10-11, 17-20, *People v. Neal*, No. 96 CR 14024 (June 24, 2008).) She admitted, however, that she did not share this information with trial counsel and had previously signed an affidavit saying Neal arrived home at 12:30 a.m. on the day of the crimes. (*Id.* at RR-28-35.) Trial counsel testified that the police reports showed that Neal gave three different alibis – that he was by himself, at a New Year's Eve party with Morton, and at home with Morton, having arrived at 1:30 a.m – at the time of the crimes. (*Id.* at RR-56-57.) Counsel also testified that he decided to use a reasonable doubt defense because the state's witnesses were incredible, given their gang affiliations, prior criminal convictions and limited time to observe

3

the shooter, and there was no other evidence, *e.g.*, a confession, ballistics, fingerprints, to corroborate their identifications. (*Id.* at RR-58-65.) After hearing this testimony and reviewing the transcript from the trial, the state court said:

> We go back to three solid eyewitness identifications under well lit conditions. And to go to the bottom line, [trial counsel], an experienced, excellent lawyer, was not ineffective in representing Mr. Neal. He did about as good a job as could be done. He argued identification, which I think was the proper argument, and Miss Morton's proposed testimony, given the totality of the circumstances . . . would not have changed the outcome [of the case].

(*Id.* at TT-20-21.) Because this is a reasonable conclusion from the evidence, Neal has not met his burden of showing that no reasonable fact finder would have found him guilty if Trina Morton had been called to testify.

In short, Neal has not shown that there is any basis for excusing the procedural default of claims 2a-c, 2e or 3a-d. Thus, the Court will not consider the merits of these claims.

**Merits**

That leaves claims 1 and 2d, that Neal's conviction violates due process because there is insufficient evidence to support it and his trial counsel was ineffective for failing to present expert testimony. The Court can grant habeas relief on these claims only if the state court's decisions were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or "based on an unreasonable determination of the facts in light of the evidence presented." § 2254(d)(1),(2). In making these determinations, the state court's fact findings are "presumed to be correct," a presumption that can be rebutted only "by clear and convincing evidence." § 2254(e)(1).

4

The Illinois Appellate Court correctly identified the controlling legal standard for the first claim as "whether, after viewing the evidence in the light most favorable to the State, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (*See* Ex. A, *People v. Neal*, No. 1-00-3271 at 5 (Ill. App. Ct. Aug. 21, 2002) (citing *People v. Austin*, 767 N.E.2d 433, 439 (Ill. App. Ct. 2002) for the controlling standard); *see Austin*, 757 N.E.2d at 439 (setting forth the quoted language); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (same). The crimes with which Neal was charged were first degree murder and attempted first degree murder. First degree murder requires proof that the defendant killed a person without lawful justification, and he (a) intended to kill or do great bodily harm to the victim or someone else or knew that his acts would cause the death of the victim or someone else, or (b) knew that his acts created a strong probability that the victim or someone else would be killed or suffer great bodily harm, or (c) was attempting to commit or committing a forcible felony other than second degree murder at the time. 720 Ill. Comp. Stat. 5/9-1(a). The elements of attempted first degree murder are that the defendant intended to commit first degree murder and took a substantial step toward doing so. 720 Ill. Comp. Stat. 5/8-4(a).

The state court said the evidence against Neal included testimony by three eyewitnesses, Jerry Rash, Lucius Mackey and Toushal Scott. (Ex. A, *People v. Neal*, No. 1-00-3271 at 2-4 (Ill. App. Ct. Aug. 21, 2002). Rash testified that in the early morning of January 1, 1996, he, Scott and Stacy Porter, who were in a GEO Metro, and Lavelle Smith and Mackey, who were in a Chevy Blazer, went to a gas station. (*Id.* at 2-3.) Scott stayed in the GEO while Rash fueled it, Porter and Smith stayed in the Blazer and Mackey left the Blazer to use a nearby public telephone. (*Id.* at 3-4.) At that point, a beige Oldsmobile pulled into the gas station and stopped behind the GEO and Blazer.

5

(*Id.* at 3.) Rash and Scott said the driver flashed gang signs at them, pulled out a gun and started firing at the GEO and Blazer. (*Id.*) Rash and Scott dove for cover, Mackey was shot in the leg trying to return to the Blazer and Porter and Smith were killed by the ensuing barrage of shots into the Blazer. (*Id.* at 3-4.) Later, Rash, Scott and Mackey, who were just a few feet away from the Oldsmobile and in a well-lit gas station during the incident, identified Neal as the shooter from separate lineups. (*Id.*)

With respect to Neal's claim that the eyewitness' testimony was insufficient to sustain his convictions, the appellate court said:

> . . . . [W]hile defendant has attempted to call into serious question the adequacy of [Rash, Scott and Mackey's] identifications, at the trial's conclusion the trial court evaluated "[t]he eyewitness identifications in this case as compelling." Later, during posttrial proceedings the issue was again specifically addressed, and the court stated, "I remain convinced that the three eyewitnesses were accurate in their identifications. The murder[s] took place in a well lit area, a gas station, with the three eyewitnesses a few feet away from defendant. And in terms of any cross-examination about gang affiliation or drug convictions, I find their testimony to be credible and compelling."
> . . . [O]ur view of the record provides no reason to reject the trial court's conclusions.

(*Id.* at 5-6.) The state court's conclusions that the eyewitness' identifications and testimony were credible, reliable and sufficient to sustain Neal's convictions are not unreasonable determinations of the facts presented at trial or an unreasonable application of *Jackson* to those facts. Thus, Neal is not entitled to habeas relief on this claim.

With respect to Neal's other claim, that his trial counsel was ineffective for failing to present expert testimony about eyewitness identification, the state court said:

> To establish a claim of ineffective assistance, a defendant must prove: (1) counsel's performance was deficient or fell below an objective standard of reasonableness; and (2) the defendant suffered prejudice as a result of the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *People v. Ford*, 368 Ill. App. 3d 562, 571 (2006). "Prejudice is shown when there is 'a reasonable probability'

6

that but for counsel's ineffectiveness, the defendant's sentence or conviction would have been different." *Ford*, 368 Ill. App.3d at 571. . . .

. . . .

In this case, . . . nothing in the record or in defendant's post-conviction allegations suggest[s] defense counsel's representation was objectively unreasonable under prevailing professional norms. In fact, the record reflects defense counsel extensively cross-examined the State's eyewitnesses regarding the weaknesses in their identification of defendant as the shooter. Defense counsel also highlighted the eyewitnesses' prior convictions for possession of a controlled substance and their gang affiliations in an attempt to establish they were not credible witnesses.

Furthermore, defense counsel vigorously argued during closing argument and again in defendant's post-trial motion that the unreliability of the uncorroborated eyewitnesses' identification of defendant necessitated a finding of not guilty. Defense counsel also specifically cited academic studies regarding eyewitness testimony in defendant's post-trial motion, which highlighted that: (1) eyewitnesses to violent acts are less likely to be able to recall specific details about those events; and (2) research show the victims of violent crimes are not more accurate and are sometimes less accurate in their recollections than bystanders. Notwithstanding counsel's extensive argument regarding the unreliability of eyewitnesses' identification testimony during the post-trial hearing, the trial court [found their testimony to be credible.]

. . . .

On direct appeal, we specifically rejected defendant's argument regarding the unreliability of the eyewitnesses' identifications and upheld the trial court's findings with regard to the sufficiency of the eyewitnesses' testimony in support of the conviction.

Although we recognize defendant's case might have been stronger if an identification expert had been consulted and called to testify at defendant's trial, we note nothing before us suggests defense counsel's strategy in choosing to attack the reliability of the eyewitness' identification testimony and credibility through cross-examination and closing argument was deficient under *Strickland*. Because we must judge counsel's performance within the context of the whole trial and without the benefit of hindsight, we find the circuit court did not err in dismissing defendant's post-conviction claims alleging ineffective assistance of counsel. . . .

(Ex. L, *People v. Neal*, No. 1-08-2548 at 15-22 (Ill. App. Ct. Mar. 4, 2011).)

Again, the state court correctly identified the controlling legal standard, *Strickland*. Thus, Neal is entitled to relief only if the state court "unreasonably applie[d]" *Strickland* to the facts of this case. § 2254(d); *see Holman v. Gilmore*, 136 F.3d 876, 881 (7th Cir. 1997) ("*Strickland* builds in an element of deference to counsel's choices in conducting the litigation; § 2254(d)(1) adds a layer of respect for a state court's application of the legal standard."). If, however, "the state court [took] the [governing] rule seriously and produce[d] an answer within the range of defensible positions, § 2254(d)(1) requires the federal court to deny the petition." *Mendiola v. Schomig*, 224 F.3d 589, 591-92 (7th Cir. 2000). As the above-quoted analysis demonstrates, that is the case here. Therefore, Neal is not entitled to habeas relief on his ineffective assistance claim. *See Holman*, 126 F.3d at 882 ("Counsel must contest the prosecution's case and advance a good defense; if that role has been fulfilled, a writ of habeas corpus should not issue.").

## Conclusion

For the reasons set forth above, the Court denies Neal's petition for a writ of habeas corpus [1] and terminates this case.

**SO ORDERED.**                                    **ENTERED: May 17, 2012**

_____
**HON. RONALD A. GUZMAN**
**United States District Judge**